| | |
|---|---|
| | |

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VICTOR HOUX,<br><br>   Plaintiff,<br><br> v.<br><br>LUKE KOLL,<br><br>   Defendant. | Case No.: 1:15-cv-00146-LJO-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>[ECF No. 39] |

Plaintiff Victor Houx is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Individuals detained pursuant to California Welfare and Institutions Code § 6600 et seq. are civil detainees and are not prisoners within the meaning of the Prison Litigation Reform Act. Page v. Torrey, 201 F.3d 1136, 1140 (9th Cir. 2000).

Currently before the Court is Defendant's motion for summary judgment, filed April 6, 2018.

**I.**

**RELEVANT BACKGROUND**

This action is proceed against Defendant Luke Kill, a Psychiatric Technician at Coalinga State Hospital (DSH-C) for an unreasonable search and seizure in violation of the Fourteenth Amendment.

Defendant filed an answer to the complaint on April 25, 2017. On April 26, 2017, the Court issued the discovery and scheduling order.

1 | As previously stated, on April 6, 2018, Defendant Koll filed a timely motion for summary
2 | judgment. Plaintiff filed an opposition on May 9, 2018, and Defendant filed a reply on May 21, 2018.

## II.

## LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun, 509 F.3d at 984 (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d at 942 (quotation marks and citation omitted).

## III.

## DISCUSSION

### A. Summary of Plaintiff's Allegations

On March 3, 2014, at approximately 4:15 p.m., Plaintiff was in his living area on Unit 8, when Luke Koll knocked loudly on Plaintiff's dorm room door and announced in a loud voice, "locker search." Koll then entered Plaintiff's privacy curtain, at which time Plaintiff got up from his bed and said "no problem." Defendant Koll instructed Plaintiff to remove his shirt and Plaintiff complied.

2

1   Koll then instructed Plaintiff to remove his shorts and boxer shorts. Plaintiff stated, "I'll remove my
2   pants and you can look into my boxer shorts" at which point he pulled out the top of his boxer shorts
3   so Defendant could see inside.

4   Defendant then stated, "I need you to take off your shorts and boxers too." At this point
5   Plaintiff replied, "You can't strip search me, besides there are females in the room." The female staff
6   member's name is Ebony, who was in the process of searching another individual's living area in the
7   same dorm whose privacy curtain was completely open as well.

8   Defendant Koll then stated, "It's OK, the curtains will cover you." At this point Plaintiff again
9   complained that Defendant could not stripe search him without cause. Defendant got a smug look on
10  his face and replied, "This is a just cause search. I was ordered to perform this search on you."
11  Plaintiff then replied, "that doesn't sound right." Defendant then stated, "that's the order."

12  Defendant Koll was the only staff member present in Plaintiff's bed area during the entire
13  search with the curtain open. Plaintiff reluctantly complied with all Defendants' order under protest.
14  Plaintiff removed all of his clothing, and stood in front of him completely nude, while Koll inspected
15  Plaintiff's clothing. When Koll finished inspecting the clothing, he handed Plaintiff the clothes back
16  and Plaintiff got dressed. Upon reflection, Plaintiff contends there were a couple of instances where
17  Plaintiff noticed Defendant Koll looking at him while he was inspecting Plaintiff's clothing. During
18  the entire time, unit staff member Ebony and the other officers searching the other area in the dorm
19  were approximately 7 to 10 feet away from where Plaintiff was and the curtains were fully open the
20  entire time.

21  Thereafter, Koll without assistance proceeded to search Plaintiff's living area in a reckless and
22  indifferent manner. During the search, Koll requested and was provided with three gray property
23  storage bins. He then began placing all of his property into the bins. When Plaintiff asked the reason,
24  Koll replied "to categorize all your stuff."

25  After Koll finished, and all of Plaintiff's property was in the gray bins on the floor, Plaintiff
26  asked Koll if he was going to return his things back where he found them. Koll replied, "I'm
27  categorizing." At this point, another staff member told Defendant Koll "we're done." At that point,
28  Koll stood up, looked at Plaintiff with a smile and stated, "You can put it all back now."

3

**B. Statement of Undisputed Facts[1]**

1. On March 3, 2014, Luke Koll was employed by DSH-C as a psychiatric technician. (Declaration of Luke Koll (Koll Decl.) ¶ 1.)

2. Victor Houx is a civil detainee at DSH-C. (Amd. Compl., § C; ECF No. 8.)

3. Patient Houx has a history of substance abuse. (Declaration of David Lewright (Lewright Decl.) ¶ 3; Declaration of Samantha Sanchez (Sanchez Decl.) ¶ 4.

4. Patient Houx shares a room with Patient Miller. (Sanchez Decl. ¶ 3; Lewright Decl. ¶ 3.)

5. Patient Houx and Patient Miller have separate bed areas within their room. (Sanchez Decl. ¶ 3.)

6. Staff typically ask patients to stay out of each other's bed areas. (Sanchez Decl. ¶ 3.)

7. It is the common practice at the DSH-C to redirect patients out of another patient's bed area. (Sanchez Decl. ¶ 3.)

8. On March 3, 2014, Unit Supervisor David Lewright was informed that Patient Houx and his roommate Patient Miller were suspected of having drugs on his possession. (Lewright Decl. ¶ 4.)

9. On March 3, 2014, Unit Supervisor David Lewright ordered staff, including Defendant Knox, to search Patient Houx's and Miller's living area and conduct a search of the patient's bed areas and persons for contraband with Department of Police Services present. (Lewright Decl. ¶ 4; Koll Decl. ¶ 3.)

10. DSH-C had certain guidelines for staff in place regarding search requirements at the time of the search. (Declaration of Jennifer Maul (Maul Decl.), Ex. A.)

11. Staff, including Defendant Koll, informed patients Houx and Miller of the search. (Koll Decl. ¶ 4; Lewright Decl. ¶ 6.)

12. Defendant Koll asked patient Houx to remove his button up shirt, as he was wearing a T-Shirt. (Koll Decl. ¶ 4; Lewright Decl. ¶ 6.)

---

[1] Hereinafter referred to as "UDF".

4

**C.     Parties Arguments**

Defendant argues that Plaintiff cannot demonstrate that there was a violation of his Fourth Amendment rights because there is no credible evidence to support a finding that the alleged strip search occurred. In the alternative, Defendant argues that he is entitled to qualified immunity because the alleged search was consistent with the applicable guidelines.

In opposition, Plaintiff argues that Defendant Koll subjected him to an unreasonable strip search because a female was in the room and he conducted a property search in a "reckless and indifferent manner."

In response, Defendants argues that Plaintiff has failed to present any evidence to raise a triable issue of fact regarding the reasonableness of the search and, in any event, Defendant is entitled to qualified immunity.

**D.     Analysis and Findings on Motion**

As a civil detainee, Plaintiff is entitled to treatment more considerate than that afforded pretrial detainees or convicted criminals. Jones v. Blanas, 393 F.3d 918, 931-32 (9th Cir. 2004). Plaintiff's right to constitutionally adequate conditions of confinement is protected by the substantive component of the Due Process Clause. Youngberg v. Romeo, 457 U.S. 307, 315 (1982).

    1.     Merits of Fourth Amendment Claim

A determination whether Plaintiff's rights were violated requires "balancing of his liberty interests against the relevant state interests." Youngberg, 457 U.S. at 321. Plaintiff is "entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish," but the Constitution requires only that courts ensure that professional judgment was exercised. Youngberg, 457 U.S. at 321-22. A "decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." Id. at 322-23; compare Clouthier v. County of Contra Costa, 591 F.3d 1232, 1243-44 (9th Cir. 2010) (rejecting the Youngberg standard and applying the deliberate indifference standard to a pretrial detainee's right to medical care, and noting that pretrial detainees, who are confined to ensure

presence at trial, are not similarly situated to those civilly committed). The professional judgment standard is an objective standard and it equates "to that required in ordinary tort cases for a finding of conscious indifference amounting to gross negligence." Ammons v. Washington Dep't of Soc. & Health Servs., 648 F.3d 1020, 1029 (9th Cir. 2011) (citations and internal quotation marks omitted).

The Fourth Amendment prohibits only unreasonable searches. Bell v. Wolfish, 441 U.S. 520, 558 (1979); Byrd v. Maricopa Cnty. Sheriff's Dep't, 629 F.3d 1135, 1140 (9th Cir. 2011); Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir. 1988). The reasonableness of the search is determined by the context, which requires a balancing of the need for the particular search against the invasion of personal rights the search entails. Bell, 441 U.S. at 558-559 (quotations omitted); Byrd, 629 F.3d at 1141; Bull v. City and Cnty. of San Francisco, 595 F.3d 964, 974-75 (9th Cir. 2010); Nunez v. Duncan, 591 F.3d 1217, 1227 (9th Cir. 2010); Michenfelder, 860 F.2d at 332-34.

Because the Fourth Amendment right to be secure against unreasonable searches and seizures applies to incarcerated prisoners, the same Fourth Amendment right applies to civilly detained sexually violent predators. Hydrick v. Hunter, 500 F.3d 978, 993 (9th Cir. 2007) (citing Thompson v. Souza, 111 F.3d 694, 699 (9th Cir. 1997)). However, the reasonableness of the search involving a civilly detained SVP is determined by reference to the detention context. Hydrick, 500 F.3d at 993. "SVP's have been civilly committed subsequent to criminal convictions and have been adjudged to pose a danger to the health and safety of others." Id. at 900. Civilly detained SVP's have a diminished right to privacy. Cf. Bell v. Wolfish, 441 U.S. 520, 557 (1979); Hydrick, 500 F.3d at 990. The government's legitimate interests in conducting a search of a civilly detained SVP or his room mirrors those that arise in the prison context, such as the safety and security of guards and others in the facility, order within the facility, and the efficiency of the facility's operations. Id. at 993; see Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004). A search will violate a civilly detained SVP's Fourth Amendment rights if its "arbitrary, retaliatory, or clearly exceeds the legitimate purpose of detention." Meyers v. Pope, 303 F. App'x 513, 516 (9th Cir. 2008); Hydrick, 500 F.3d at 993.

To determine if a given strip search is reasonably related to a legitimate penological interest, courts follow the test outlined in Bell v. Wolfish:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition of mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place which it is conducted.

Bell v. Wolfish, 441 U.S. at 559.

While the parties dispute whether Defendant Koll ordered Plaintiff to remove all of his clothing or whether Plaintiff voluntarily removed his clothing, the dispute is not material because, even assuming the facts in favor Plaintiff, the strip search was conducted in a reasonable manner. It is undisputed that Defendant Koll's supervisor ordered the search and the search was ordered because Plaintiff was suspected of having contraband. (UDF 9; Lewright Decl. ¶ 3; Pl. Decl. p. 2 [stating Defendant Koll told him he was ordered to perform the search and it was a just cause search].) While Plaintiff may attempt to dispute this fact, he presents no evidence to do so. It is also undisputed that Internal Management Directive (MD) No. 820 permits strip searches when the contraband is small enough to be hidden in the folds of the skin. (UDF 10.) A visual search for contraband is certainly a legitimate penological interest. Thompson v. Souza, 111 F.3d 694, 700 (9th Cir. 1997) (quoting Michenfelder, 860 F.2d at 332, citing Bell, 441 U.S. at 558-60.) Further, there are no allegations to support a finding that the search was excessive, vindictive or harassing. Indeed, it is undisputed the search by Koll was visual, not physical. Given that the search was for drugs and it is undisputed that Plaintiff has a history of substance abuse, it is logical that drugs could be small enough to hide on his person, thereby, justifying a strip search. With regard to the location of the search, Plaintiff contends the strip search took place in his living area, with an open curtain where other staff members, including a female, could see him. However, in both Thompson and Michenfelder, the Ninth Circuit has found less private areas to be appropriate locations to conduct strip searches. See Thompson, 111 F.3d at 701 (search was conducted within view of other prisoners on a tier outside inmate's cell); Michenfelder, 860 F.2d at 330, 333 (search was conducted in hallway in view of other prisoners on the same tier and indirectly on video camera by opposite sex prison staff).

Plaintiff claims that a strip search is unconstitutional if "conducted in an unnecessarily public manner or with the unnecessary involvement or present of opposite-sex staff." (Opp'n at p. 5.)

However, contrary to Plaintiff's argument, courts have found strip searches of males may be performed when female staff are present. Michenfelder, 860 F.2d at 334; Grummett v. Rushen, 779 F.2d 491, 494 (9th Cir. 1985); see also Jones v. Harrison, 864 F.Supp. 166, 168-69 (D. Kan. 1994). Furthermore, as Plaintiff submits, the female staff member had a purpose for being in the room: "[she] was in the process of searching another individual's living area …." (Opp'n at p. 2; Pl.'s Decl. at pp. 1-2 ("The female staff member's name was Ebony, who was in the process of searching another individual's living area in the same dorm …."); Web Decl. ¶ 3 ("the remainder of the staff proceeded to Mr. Kevin Miller's living area."); Yartz Decl. ¶ 4; ECF No. 40.) Thus, even assuming the truth of the allegations set forth in Plaintiff's opposition, it is undisputed that the female staff member in the room was not unnecessarily there and there is no showing of a violation. Moreover, there are no fact to support a finding that the female staff member was there to humiliate or harass Plaintiff. Rather, as Plaintiff acknowledges, the female staff engaged in a search of the other living area. (Id.) Indeed, there are no allegations or evidence that the female staff member was there to conduct or participate in the alleged strip search of Plaintiff. Furthermore, the search was conducted in his room, and not in a public area as in Thompson and Michenfelder. Thus, it is undisputed that the non-contact visual search performed by male psychiatric technician Koll, with some "casual observation" by a female staff Ebony, was reasonable. See Michenfelder, 860 F.2d at 334 (citing Grummett, 779 F.2d at 494-95).

      Plaintiff further argues that Defendant Koll searched and categorized his property by placing them into bins fails to raise a triable issue of material fact as to the reasonableness of the search. Contrary to Plaintiff's claim, Defendant Koll's actions reveal that he was conducting the search in a manner that was organized and efficient. To the extent Plaintiff contends the search was unreasonable based on destruction or disorganization of his property, such claim fails. See, e.g., Mena v. City of Simi Valley, 226 F.3d 1031, 1041 (9th Cir. 2000) (officers may sometimes damage property during a search but "the destruction of property during a search does not necessarily violate the Fourth Amendment.") (citing United States v. Becker, 929 F.2d 442, 446 (9th Cir. 1991)). There is no evidence that any of Plaintiff's property was destroyed in any way, only that it was left in bins. Thus,

given that destruction of property may be reasonable, the simple failure to return items to a certain area does not give rise to an unreasonable search.

Based on the foregoing, Defendant's motion for summary judgment should be granted because there are no triable issues of material fact regarding the reasonableness of the alleged "strip search," and judgment should be entered in favor of Defendant Koll.

### 2. Qualified Immunity

Even if a material issue of fact exists, Defendant Koll is entitled to qualified immunity.

Qualified immunity is "immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Mueller v. Auker, 576 F.3d 979, 993 (9th Cir. 2009) (citation and internal quotations omitted). Qualified immunity shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," Pearson v. Callahan, 555 U.S. 223, 231 (2009), and it protects "all but the plainly incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341 (1986).

In resolving the claim of qualified immunity, the Court must determine whether, taken in the light most favorable to Plaintiff, Defendant's conduct violated a constitutional right, and if so, whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201 (2001); Mueller, 576 F.3d at 993. While often beneficial to address in that order, the Court has discretion to address the two-step inquiry in the order it deems most suitable under the circumstances. Pearson, 555 U.S. at 236 (overruling holding in Saucier that the two-step inquiry must be conducted in that order, and the second step is reached only if the court first finds a constitutional violation); Mueller, 576 F.3d at 993-94.

The following facts are undisputed: (1) a search was conducted in Plaintiff's room which contained a "privacy curtain"(UDF 11; Pl. Decl. at p. 2; SDFI at p.2); (2) Defendant Koll's supervisor instructed him to conduct a search of Plaintiff's bed area and person based on suspension of having contraband and Defendant Koll conducted the search (UDF 9; SDFI at p.2; Lewright Decl. ¶ 3); (3)

Plaintiff has a history of substance abuse (UDF 3, SDFI at p. 1; Lewright Decl. ¶ 4); (4) DSH-C has certain guidelines for staff in place regarding search requirements, which allows for strip searches when the subject contraband is "small enough to be hidden … in the folds or creases of the skin of the person" (UDF 10, SDFI at p. 2). Further, Plaintiff has alleged only a visual inspection of his body, and there are no allegations that a body cavity search or a search that involved touching occurred in this case, each of which would have been more invasive. Based on the undisputed facts and the applicable law which allows strip searches, the evidence viewed in the light most favorable to Plaintiff demonstrates that a constitutional violation did not occur, and this ends the analysis. Therefore, Defendant Koll is entitled to qualified immunity.

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendant's motion for summary judgment be granted; and
2. Judgment be entered in favor of Defendant.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **June 21, 2018**

UNITED STATES MAGISTRATE JUDGE